HON. RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONRAD O. GARDNER,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | Case No. C 08-0632 RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the Court on Defendants' motion for partial summary judgment (Dkt. # 70). After careful consideration of the parties' briefing and supporting evidence, and the oral argument of counsel, the court GRANTS the Defendants' motion (Dkt. # 70).

## II. BACKGROUND

### A. The '627 Patent

United States Patent 7,290,627 ("the '627 patent") issued on November 6, 2007, to Plaintiff Conrad Gardner from application No. 08/896,514 ("the '514 application"),

ORDER — 1

which was filed on June 23, 1997. The '514 application's ancestry includes two continuation-in-part applications (08/273,114 and 08/140,507) and one continuation application (07/867,412).

The subject of the motion for partial summary judgment before the Court is claim 6 of the '627 patent, which reads as follows:

> 6. A hybrid motor vehicle comprising in combination:
> an engine;
> an electric motor;
> a storage device;
> said electric motor power said hybrid motor at lower speeds;
> said engine powering said vehicle at high speeds; and said engine operatively connected through a charging path for charging said battery at lower speeds
> wherein said speed demands do not drop below 40 mph for predetermined time periods of 45 seconds.

Ferrill Decl (Dkt. # 74), Ex. 1.

**B.      The Prosecution History of Claim 6 of the '627 Patent**

The prosecution history of the '514 application is rather long, spanning numerous office actions, amendments, and two appeals to the Board of Patent Appeals and Interferences ("the Board"). The prosecution history of claim 6 — the only claim at issue in the instant motion — can be traced to independent claims 50 and 51 and dependent claim 52 of the '514 application, which read as follows:

> 50. A hybrid motor vehicle comprising in combination:
> An electric motor propulsion system which shifts to combustion engine propulsion for vehicle operation when cruise mode is reached;
> said cruise mode occurring when rapidly shifting power and speed demands are not occurring for predetermined periods of time.
>
> 51. A hybrid motor vehicle comprising in combination:
> an engine;
> an electric motor;

ORDER — 2

>   a storage device;
>   said electric motor power said hybrid motor at lower speeds;
>   said engine powering said vehicle at high speeds; and said engine operatively connected through a charging path for charging said battery at lower speeds.
>
>   52. A hybrid vehicle according to Claim 50 wherein said speed demands do not drop below 40 mph for predetermined time periods of 45 seconds.

Ferrill Decl. (Dkt. # 74), Ex. 3-H at 89[1] (claim 50); Ex. 3-J at 103 (claim 51); Ex. 3-K at 107 (claim 52).

During prosecution the Examiner of the '514 application stated that claim 52 would be allowable if rewritten in independent form to include all of the limitations of claim 50, its parent claim. However, subsequent to the Examiner's statement, and after an appeal to the Board, the Examiner then stated that claim 52 would be allowable if rewritten incorporating the limitations of independent claim 51. The prosecution history of the '514 application does not reveal a reason for this change. While the reason for the change remains unclear, there is no dispute that Mr. Gardner submitted a new claim based on the combination of claims 51 and 52 just before the issuance of the '627 patent. This newly submitted claim ultimately issued as claim 6 in the '627 patent.

## C. Procedural History of this Lawsuit

Mr. Gardner filed this suit in April 2008, claiming that products made and sold by Defendants Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc. (collectively referred to hereinafter as "Toyota") infringed claims 1-6 of the '627 patent. In this motion, Toyota contends that claim 6 of the '627 patent (1) is indefinite because it fails to meet the requirements of 35 U.S.C § 112 ¶ 2; and (2) is invalid per se

---

[1] There are multiple page-numbering schemes visible on the exhibits attached to the Ferrill Declaration. This order will refer to the page number in the middle of the footer on each exhibit page.

ORDER — 3

under 35 U.S.C. § 131 because it was never examined on the merits by the United States Patent and Trademark Office.

### III.     ANALYSIS

**A.     Legal Standards.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*.

The determination of the definiteness of a claim is a legal conclusion based on the court's duty to construe patent claims. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). As such, the definiteness of a claim is a question of law and appropriate for resolution at summary judgment. *See id*. (affirming summary judgment on indefiniteness grounds). A definiteness determination is made in light of a patent's presumption of validity. *See* 35 U.S.C. § 282. As such, a finding of indefiniteness must be shown by clear and convincing evidence. *Datamize*, 417 F.3d at 1348.

The specification of a patent "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. A patentee's claims must be sufficiently definite so that the metes and bounds of what the patentee regards as the exclusive right granted by the patent are known to the public. *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Specifically, if a claim is such that a person of

ordinary skill in the art cannot determine whether a particular product infringes a given claim, then the claim is indefinite. *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003). The determination of a claim's definiteness is necessarily tied to the process of claim construction by a court. *Datamize,* 417 F.3d at 1348. As such, the definiteness of a claim is determined with respect to the claims themselves, the intrinsic evidence (specification, prosecution history) of the patent, and, if necessary, any extrinsic evidence (expert testimony). *Id.* If a claim is "not amenable" to construction by the court or is "insolubly ambiguous," then the claim is indefinite. *Id.* at 1347. Conversely, if a claim is amenable to being construed, it cannot be invalid on grounds of indefiniteness. *Id*. Further, even if a claim term lacks express antecedent basis, the whole of the claim is not automatically rendered indefinite. *See* Manual of Patent Examining Procedure § 2173.05(e); *Energizer Holdings v. ITC*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006). Rather, where a term lacks express antecedent basis, such antecedent basis may be found by implication elsewhere in the patent. *Energizer*, 435 F.3d at 1370-71.

**B.     Claim 6 Contains At Least One Indefinite Claim Element.**

Toyota argues Claim 6 is invalid because it contains three indefinite claim elements, specifically: 1) "said speed demands"; 2) "lower speeds"; and 3) "higher speeds."

Toyota argues that the term "said speed demands" is indefinite because it lacks express or implicit antecedent basis and that the term bears no logical relationship to the rest of claim 6. Toyota theorizes that the reason for this disjunction is that the "said speed demands" element was improperly grafted onto application claim 50 during the application process.

Mr. Gardner does not respond directly to Toyota's claim of the lack of express antecedent basis. Instead, Mr. Gardner's response offers multiple constructions of the

term "said speed demands." First, in the Joint Claim Construction Chart, Mr. Gardner construes "said speed demands" as "[t]he invention operating at a steady state cruise speeds above 40 mph for steady state periods greater than 45 seconds." *See* Notice of Joint Claim Construction Chart (Dkt. # 52) at 25. Second, in his response brief to Toyota's motion for summary judgment, Mr. Gardner offers the following construction of the "said speed demands" element:

> [T]he threshold of the hybrid vehicle's low speed and high speed control modes is a vehicle speed of about 40 miles per hour, during which the engine continues operating the vehicle so long as rapidly shifting power and speed demands are not occurring for 45 second periods of time.

Pltf.'s Opp'n (Dkt. # 86) at 18. Third, during oral argument on this motion, when asked by the Court to identify the antecedent basis for "said speed demands," counsel for Mr. Gardner directed the Court to both the "lower speeds" and "high speeds" terms in claim 6. Thus, Mr. Gardner has presented at least three different interpretations of the "said speed demands" claim term.

Mr. Gardner's first construction fails because he substitutes the term "cruise" for "said speed demands." As stated in the specification of the '627 patent, "[c]ruise mode occurs when rapidly shifting power and speed demands are not occurring for predetermined periods of time." While "cruise mode" may comprise "speed demands," speed demands are not sufficient for "cruise mode." Furthermore, the concept of "cruise mode" is not expressly present in claim 6. The existence of "lower speed" and "high speed" elements in claim 6 does not provide for the concept implicitly. The wording of the low-speed and high-speed elements restricts the powering of the vehicle by two different engines. Cruise mode, or any equivalent, does not exist in claim 6 and any a construction that imports it as a term goes beyond the Court's ability to construe a claim.

ORDER — 6

Mr. Gardner's second construction fails for similar reasons. While the term "cruise" is not used, Mr. Gardner instead uses a definition of cruise mode (*e.g.*, rapidly shifting power and speed). While the terminology has changed slightly, the result is the same. New limitations that do not exist in claim 6 are added. Indeed, the ordinary meaning of the term "speed demands" does not include any "rapidly shifting power" requirement. Thus, like Mr. Gardner's first construction, this second construction also fails.

Mr. Gardner's third construction argues that "high speeds" and "lower speeds" provide express antecedent basis, but such a construction would result in a contorted construction of the "said speed demands" element of claim 6. *Both* the lower and high speed elements would then be subject to the terminology that they "do not drop below 40 mph for predetermined time periods of 45 seconds." Such a construction would be "insolubly ambiguous." *Datamize,* 417 F.3d at 1347.

Despite these different interpretations presented by Mr. Gardner, it is nonetheless the duty of the court to interpret the meaning of the claims and determine whether they are indefinite under 35 U.S.C. § 112 ¶ 2. *Datamize*, 417 F.3d at 1347-48. Even if experts in a case disagree on the construction of a claim, a court may still find the claims to be definite. *See, e.g.*, *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, 614 F. Supp. 2d 1006, 1030-31 (N.D. Cal. 2009) (despite expert disagreement regarding the scope of "U-shaped," the court found the term to be not indefinite).

When construing a claim, the intrinsic evidence of a patent — which consists of the wording of the claims, the specification, and the prosecution history — provides a roadmap used to determine the meaning of the patent's claim terms. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

The plain meaning of the words in claim 6 and the other claims of the '627

ORDER — 7

patent provide little or no guidance for construing the scope of the term "said speed demands." Admittedly, "speed" is easily understood by a person of ordinary skill in the art: it is a distance traveled over a given time. Further, the rest of the "speed demands" element defines specific parameters for speed demands, namely "40 mph" for "45 seconds." However, none of this gets the Court much closer to defining the scope of claim 6 in the '627 patent, with regard to the meaning of "wherein said speed demands do not drop below 40 mph for predetermined time periods of 45 seconds."

As noted by Mr. Gardner's counsel during oral argument, "wherein" is a reference back to a previous paragraph[2] in claim 6. Thus, a person of ordinary skill in the art would understand the "said speed demands" element to be referring to an earlier claim element in claim 6. It is this reference to something earlier in claim 6 that is a source of the ambiguity of the "said speed demands" element. Claim 6 includes both a "lower speed" element and a "high speed" element. As noted above, a construction involving both "lower speed" and "high speed" as a foundation for "said speed demands" results in claim 6 being insolubly ambiguous. Nothing in claim 6 directs one of ordinary skill in the art as to which of the two earlier recited speeds provides the antecedent basis for "said speed demands."

As the claims fail to provide any concrete guidance for one of ordinary skill in the art to determine the scope of claim 6, the Court next turns to the specification and the prosecution history of the '627 patent for guidance in construing the "said speed demands" element.

The specification sheds some light on the meaning of the "said speed demands" element because it recites "said speed demands" as part of the described cruise mode operation. Ferrill Decl. (Dkt. # 74), Ex. 1, col 1:65-67. Further, the specification

---

[2]"When you use the word 'wherein' that is a reference back to the previous paragraph. It's a subordinate clause. That is grammar. The speed demands they're talking about are high speeds and lower speeds." Transcript of Oral Argument (Sept. 18, 2009) at 33.

ORDER — 8

describes the "said speed demands" in the context of a "cruise mode logic output signal." The "cruise mode logic output signal" triggers if a vehicle is above 40 mph for 45 seconds. *Id.*, Ex. 1, col 3:39-45. However, neither the "cruise mode" nor "a cruise mode logic output signal" is mentioned in claim 6.

A close reading of the prosecution history of the '627 patent provides further support that "said speed demands" relates to a cruise mode operation. The "said speed demands" element originated in the March 23, 1999 amendment of the '514 application as claim 52. In the remarks section of the amendment, Mr. Gardner stated that, "More importantly, the specification at page 9, lines 23-28 and also page 10 lines 9-15 and 27-29 referring to Fig. 2 and further illustrative of electric to combustion engine cruise mode control defined in claims 50 and more specifically in added dependent claim 52." Ferrill Decl. (Dkt. # 74), Ex. 3-K at 108. Additionally, the prosecution history further provides support for interpreting the rest of claim 6. When Mr. Gardner added claim 51, he made no mention of a cruise control feature in the remarks accompanying the addition of claim 51, but instead stated:

> Added independent claim 51 readable on the species of Figure 1 is believed necessary to round out the protection of the present invention which includes the features that the present system includes a mode of operation where the system is operating in a series configuration where engine power can be utilized to charge the storage device at lower speeds or idle when propulsion is by the electric motor e.g. in city driving is utilized, and the engine can also be utilized to power the vehicle in parallel configuration with the wheels for providing power at higher speeds.

Ferrill Decl. (Dkt. # 74), Ex. 3-J at 104. Thus, not only does the prosecution history provide support that the "said speed demands" element relates to the cruise mode feature, but it also supports the fact that the rest of claim 6 does not implicitly include the cruise mode feature.

The definition of "said speed demands" provided by the specification and the prosecution history does not, however, result in a properly construed and definite claim. "Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton*, 514 F.3d at 1251. Here, while it is clear that the "said speed demands" element relates to the cruise mode control feature, it is unclear how that definition results in a sufficiently defined scope for claim 6. Furthermore, to construe claim 6 in such a manner would essentially rewrite claim 6 to include all of the features of claims 50, 51, and 52.

**C.     Claim 6 Cannot be Corrected.**

A district court has limited authority to rewrite a claim or "fix" mistakes in a patent. *See Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1302-03 (Fed. Cir. 2005) (discussing a printing error by the U.S. Patent and Trademark Office and the court's power to correct it). The Patent Act provides a means for patent holders to seek corrections from the U.S. Patent and Trademark Office. *See* 35 U.S.C. § 254[3] or § 255[4]. A district court may only correct a patent if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification; and 2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). The Federal Circuit in *Novo Industries* further noted that such corrections are only possible if the error is discernible on the face of the patent.

Here, both parties have presented reasonable varying constructions of claim 6. Indeed, Mr. Gardner has presented multiple constructions of claim 6 in attempts to correct the language of claim 6. Further, while it is reasonably clear from the

---

[3] For mistakes made by the U.S. Patent and Trademark Office.
[4] For mistakes made by the applicant.

specification that the "said speed demands" element relates to the cruise mode control, it is unclear exactly how that relationship affects the scope of claim 6. Only a thorough reading of the prosecution history reveals exactly what the correction of claim 6 would look like. However, the prosecution history is not the "face of the patent." *See Group One*, 407 F.3d at 1302-03 (noting that a claim's missing language was only visible through examination of the parent's prosecution history). As such, the Court cannot rewrite claim 6 in order to fix it. If Mr. Gardner wishes to fix these errors, he will have to do so under the relevant statutory provisions.

As the Court cannot "fix" claim 6 as Mr. Gardner would like, the "said speed demands" element stands divested from the rest of the claim elements, its effect on the overall claim scope unclear. Further, the lack of express or implicit antecedent basis for the "said speed demands" element, and the multiple competing constructions offered render the claim insolubly ambiguous. Accordingly, the Court finds claim 6 of the '627 patent indefinite and therefore invalid. Because the Court resolves the validity of claim 6 with respect to the "said speed demands" element, the Court need not address the other two elements asserted by Toyota as a basis for invalidity, nor Toyota's 35 U.S.C. § 131 challenge to claim 6.

Mr. Gardner is correct in saying that "construing the terms of claim 6 is <u>not</u> high level math." Pltf.'s Opp'n (Dkt. # 86) at 18 (emphasis in original). It is much worse, in that it involves a hopeless attempt to resolve the ambiguities present within the English language. If only such a process were as easy as high level math, it would be both easier on the courts and patent seekers.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion (Dkt. # 70) is GRANTED.

DATED this 19th day of November, 2009.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge